**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ORBITZ, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 05 C 5972 |
| | ) | |
| v. | ) | Judge Bucklo |
| | ) | Magistrate Judge Cole |
| WORLDSPAN, LP, | ) | |
| | ) | |
| Defendant. | ) | |

**ORBITZ'S REPLY IN SUPPORT OF**
**ITS MOTION TO REMAND AND FOR ACTUAL EXPENSES**

To justify removal, Worldspan was required to establish that Orbitz's Complaint raises a federal question that is both *substantial* and an *essential element* necessary to Orbitz's claims. *Fournier v. Lufthansa German Airlines*, 191 F. Supp. 2d 996, 1000 (N.D. Ill. 2002). Worldspan has failed to meet its burden on both points, and the Court should return this improperly removed case to the Circuit Court of Cook County. Because Worldspan lacked any objectively reasonable basis for removal, the Court should also order Worldspan to pay Orbitz's costs and fees under the Supreme Court's recent decision in *Martin v. Franklin Cap. Corp.*, --- S. Ct. ---, No. 04-1140, 2005 WL 3299410 (U.S. Dec. 7, 2005).[1]

**Summary of Reply**

Worldspan presents three main arguments in its failed attempt to justify removal. Worldspan's theories are objectively unreasonable, and they certainly do not meet Worldspan's burden to establish federal jurisdiction and to overcome the law's strong presumption favoring

---

[1] Although *Martin* eliminated the presumption favoring fee awards for improvident removals, it did not limit a trial court's discretion to grant fees in cases like this where the defendant had no sound basis for removal. Far from establishing federal jurisdiction, Worldspan's Opposition depends on a series of erroneous characterizations of Illinois and federal law. A fee award is therefore warranted here.

remand. *Illinois v. Kerr-McGee Chem. Corp.*, 677 F.2d 571, 575 (7th Cir. 1982). A summary of Worldspan's arguments and their basic defects follows.

- *In its primary argument, Worldspan claims that Orbitz must prove both deception and unfairness to succeed on its Illinois Consumer Fraud Act ("ICFA") count, and that Orbitz can only prove "unfairness" by establishing that Worldspan violated DOT regulations. (Opp'n at 6-7.)*

Worldspan's main argument rests entirely on a misapprehension of Illinois law. Contrary to Worldspan's basic premise, Orbitz is *not* required to prove both deception and unfairness to succeed on its ICFA claim. Worldspan's out of date authorities have been superceded by recent Illinois Supreme Court decisions – particularly *Robinson v. Toyota Credit Corp.*, 201 Ill. 2d 403, 775 N.E.2d 951 (2002), which Worldspan failed to discuss or even cite. As discussed further below, *Robinson* and subsequent cases from this District and the Seventh Circuit confirm that ICFA plaintiffs may base their claims on conduct that is *either* unfair *or* deceptive, and that different standards control "unfairness" cases and "deception" cases. Plaintiffs are not required to allege and prove their claims under *both* standards, as Worldspan wrongly contends.

Orbitz plainly alleges deceptive conduct by Worldspan, so proof of unfairness is not a necessary element of Orbitz's ICFA claim. Further, even if Orbitz were required to allege and prove unfair conduct (which it is not), Worldspan's argument would still fall short. In its Complaint, Orbitz alleges practices by Worldspan that are (1) *by definition* unfair and deceptive under the ICFA's text and (2) have no connection to the DOT regulations. Under any analysis, proof that Worldspan violated DOT regulations is not a necessary element of Orbitz's ICFA claim.

- *Worldspan next claims that Orbitz is not a "consumer" of Worldspan's services and that Orbitz does not have ICFA standing unless it can demonstrate a negative impact on the consuming public. According to Worldspan, the only way Orbitz can establish a consumer nexus in this case is by proving that Worldspan violated DOT regulations. (Opp'n at 8.)*

This argument suffers from several flaws. Worldspan's argument reads like a summary judgment motion and improperly depends on factual assertions that purport to contradict the plain allegations of Orbitz's well-pleaded Complaint. Orbitz explicitly alleges that it *is* a consumer of Worldspan's services, and that Orbitz does *not* resell those services. (*See, e.g.*, Compl. ¶¶ 1, 6, 10, 16, 23 and 47.) Moreover, Orbitz *does not* allege that Orbitz's standing as an ICFA plaintiff is based in any way on Worldspan's disregard for DOT regulations. The Court's analysis should end there, because its review is confined to Orbitz's allegations in the form that Orbitz chose to plead them. *See Fournier*, 191 F. Supp. 2d at 1000. An opposition to a motion to remand is not the place to challenge the factual and legal merits of a plaintiff's case.

Additionally, while it is premature to entertain Worldspan's attempt to disprove Orbitz's consumer status, both the parties' contract and on-point case law from this District support Orbitz's standing as an ICFA consumer. For this independent reason, Worldspan's standing theory fails. Finally, even if Orbitz were *not* a consumer under the ICFA (which it is), Orbitz's allegations raise consumer protection concerns that would provide Orbitz with standing under Worldspan's own cited case law.

- *Worldspan claims that the DOT regulations represent an important federal issue that is reserved for the federal government.*

Worldspan contends that Orbitz's DOT allegations indirectly raise federal concerns of such magnitude that this Court must deny Orbitz its chosen forum and decide state law claims in a case where federal jurisdiction is otherwise completely lacking. Yet, Worldspan presents no case law, no statutory language, and no legislative history supporting its position. Instead, Worldspan cites (but does not quote) Section 411 of the Federal Aviation Act ("FAA"), which merely provides that the Secretary of Transportation "may investigate" and enjoin unfair conduct. *See* 49 U.S.C. § 41712(a). From that permissive language, Worldspan leaps to the

incorrect conclusion that the DOT regulations are "within the *exclusive* authority of the federal government." (Opp'n at 12, emphasis added.) Section 411's permissive language does not support Worldspan's claim of exclusive federal jurisdiction (a waived theory that Worldspan did not raise in its removal papers). Moreover, several federal decisions, including *Fournier*, reject the notion that federal air travel regulations are within the exclusive jurisdiction of federal courts.

Worldspan's analysis conspicuously avoids the key question raised by Orbitz in its opening brief: Why should DOT regulations covering CRS business practices confer federal jurisdiction over state law claims, when federal courts have unanimously held that other aviation regulations dealing with weighty subjects such as passenger safety, and *promulgated under the same authority*, do *not* confer federal "arising under" jurisdiction? (*See* Memo. at 9-10 and 13, citing *Fournier, Sarantino v. Am. Airlines, Inc.*, No. 4:05 MD 1702, 2005 WL 2406024, at *8 (E.D. Mo. Sept. 29, 2005) and *Williams v. Midwest Express Airlines*, *Inc.*, 315 F. Supp. 2d 975, 980 (E.D. Wis. 2004)).

- *Worldspan's residual arguments*.

Worldspan adds a few scattershot points that also do not support removal. Worldspan reprises the assertion from its Notice of Removal that the DOT regulations are "a thematic centerpiece" of Orbitz's Complaint. (Opp'n at 10.) As Orbitz noted previously, Worldspan's assertion is both objectively incorrect and completely irrelevant under the law controlling removal jurisdiction. Rather than point Orbitz and the Court to a decision holding that an alleged federal "theme" supports the removal of state law causes of action, Worldspan cites *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 125 S. Ct. 2363 (2005), a case where the interpretation and application of federal tax law was the *only* disputed issue. This case is unlike *Grable*. Federal DOT regulations are only collaterally involved and they are not essential to any

one of Orbitz's claims. *Accord, Baker v. BDO Seidman, L.L.P.*, 390 F. Supp. 2d 919, 924-25 (N.D. Cal. 2005); Memo. at 10-12.[2]

In a three-sentence argument, Worldspan also asserts that Orbitz's equitable estoppel claim somehow "presents" the effect of the DOT regulations. (Opp'n at 12.) As established in Orbitz's opening brief, however, Orbitz's estoppel claim is based on several deceptive acts by Worldspan that do not involve DOT regulations. (Memo. at 9.) Accordingly, Orbitz's equitable estoppel count, like its ICFA count, does not *depend* on the application of DOT regulations. Because no substantial federal issue is necessary to Orbitz's estoppel claim, Worldspan's removal was improper.

Finally, Worldspan fails to meaningfully distinguish the federal cases cited by Orbitz in its opening brief. Those cases, which were decided both before and after *Grable,* establish that federal air travel regulations do *not* present a substantial federal issue, even where the plaintiff has alleged that the regulations support elements of its state law claims.

### Argument

### I.      Worldspan's "Unfairness" Theory Contradicts Illinois and Federal Law

Worldspan's lead argument posits that Orbitz must allege and prove "unfairness" to succeed on its ICFA claim, and that Orbitz can only support "unfairness" by proving that Worldspan violated DOT regulations. Neither point is correct. Contrary to Worldspan's assertion**,** Illinois law does *not* require ICFA plaintiffs to allege and prove that the defendant engaged in acts that were both unfair *and* deceptive.

---

[2]      After Orbitz filed its initial brief, two additional courts addressed *Grable* in well-reasoned opinions and remanded under circumstances similar to this case and *Baker.* For the Court's benefit, but without raising new arguments justifying further briefing, Orbitz respectfully brings the new cases to the Court's attention. *RA Inv. I, LLC v. Smith & Frank Group Servs.*, No. 4:05 CV 363, 2005 WL 3299710, at *2-4 (E.D. Tex. Dec. 5, 2005); *Acker v. AIG Int'l, Inc.*, --- F. Supp. 2d ----, No. 05-22072, 2005 WL 2994778, at *2-5 (S.D. Fla. Nov. 8, 2005).

In its Complaint, Orbitz alleges that Worldspan engaged in *deceptive* conduct, which provides an independent basis for Orbitz's ICFA claim. Because proof of unfairness is not a necessary element of Orbitz's case, Worldspan's theory fails.[3] Further, even if Orbitz were required to prove unfairness (it is not), Orbitz could do so without relying on DOT regulations.

The ICFA plainly covers "unfair *or* deceptive acts or practices," 815 ILCS 505/2 (emphasis added), and the Illinois Supreme Court recently confirmed that plaintiffs may prevail under *either* an unfairness theory *or* a deception theory. *See Robinson*, 201 Ill. 2d at 417, 775 N.E.2d at 960 (discussing in detail the elements of an ICFA claim based exclusively on unfair conduct). *Accord*, *Anthony v. Country Life Mfg., LLC*, No. 02 C 1601, 2002 WL 31269621, at *1 (N.D. Ill. Oct. 9, 2002), *aff'd* 70 Fed. Appx. 379, 382 (7th Cir. 2003); *Johnson v. PS Ill. Trust*, No. 03 C 6517, 2005 WL 2035589, at *7 (N.D. Ill. Aug. 17, 2005) (confirming *Robinson*'s meaning).

Worldspan's cited authority held that unfair but non-deceptive conduct does not support a consumer fraud claim. However, the cases Worldspan cited have been superseded by the Illinois Supreme Court's decision in *Robinson* – a case Worldspan did not bring to the Court's attention. The current state of the law is beyond dispute: *First*, under *Robinson*, ICFA plaintiffs may now state claims based on unfair conduct without proof of deception, subject to certain additional elements such as proof that the unfair act violated public policy; *Second*, as has always been the case, plaintiffs may base ICFA claims on deceptive conduct without having to satisfy the additional factors discussed in *Robinson*. *Compare Robinson*, 201 Ill. 2d at 417-18, 775 N.E.2d at 960-61 (establishing the heightened standard for ICFA claims based on unfair but non-deceptive conduct), *with Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 190-95, 835

---

[3] Where a plaintiff alleges alternative theories of recovery that do not raise a federal issue, removal is unwarranted. *Baker*, 390 F. Supp. 2d at 924-25. Worldspan concedes this point. (Opp'n at 11, discussing *Baker*.)

N.E.2d 801, 856-58 (2005) (clarifying the standard for ICFA claims based on deceptive

conduct). *Avery* does not even mention unfairness in its analysis of deception claims. [4]

Worldspan's consumer fraud cases are simply out of step with Illinois law. They also

have no relevance here. Orbitz's case plainly does not stand or fall on allegations of unfair but

non-deceptive practices by Worldspan. Instead, Orbitz's Complaint alleges that Worldspan

concealed and misrepresented material facts, fraudulently inducing Orbitz to enhance and extend

its business obligations to Worldspan. (Memo. at 4-5.) Because Worldspan allegedly engaged

in deceptive conduct, Orbitz is not required to establish that Worldspan violated any public

policy, including the policy contained in the DOT regulations.

Finally, the ICFA's text contradicts Worldspan's argument that Orbitz must depend on

the DOT regulations to prove that Worldspan acted unfairly and violated the ICFA. Worldspan's

actions are *by definition* actionable unfair or deceptive practices under the ICFA. The ICFA

explicitly proscribes "unfair or deceptive acts or practices, including but not limited to the use or

employment of any deception, fraud, false pretense, false promise, misrepresentation or the

concealment, suppression or omission of any material fact." 815 ILCS 505/2. Orbitz plainly

alleges that Worldspan deceived Orbitz and concealed, suppressed or omitted material facts. The

DOT regulations' meaning and application have nothing to do with Worldspan's deceptions as

alleged in the Complaint. (*See* Compl. ¶ 39 ("Worldspan's Deceptive Acts and Practices")).

---

[4]    Worldspan cites a few decade-old cases from this District that relied on *Laughlin v. Evanston Hosp.*, 133 Ill. 2d 374, 390, 550 N.E. 2d 986 (1990). (*See* Opp'n at 7.) *Laughlin* is a well-documented outlier case that has been widely ignored by Illinois courts because of its apparent conflict with years of Illinois precedent and the clear statutory language of the ICFA. *See* Landsman, *The Effect of Laughlin v. Evanston Hospital on Consumer Fraud Act Claims*, 9 LOY. CONSUMER L. REV. 54 (1997) ("Lower courts so underwhelmed by Laughlin not only ignore its precedential value, they fail to acknowledge its very existence."). After *Robinson*, no reasonable argument remains that the ICFA requires plaintiffs to satisfy all of the steps for unfair acts (including proof of public policy violations) *and also* satisfy the steps set forth in *Avery* for deceptive acts. Accordingly, plaintiffs alleging deceptive conduct are not required to establish that the defendant also acted unfairly in a way that violated public policy.

Contrary to Worldspan's straw-man argument, Orbitz's ICFA claim does not turn on Orbitz's allegation that Worldspan's behavior – with regard to *one* of the two amendments at issue[5] – violated Illinois public policy and the policy evinced by DOT regulations. If the Court completely disregards the DOT allegations in Orbitz's Complaint, Orbitz still states an ICFA claim based on Worldspan's deceptive actions. The DOT regulations do not represent a *necessary* element of Orbitz's case. Worldspan thus had no objective basis for removal.

## II.     Worldspan's Consumer Standing Argument Fails

Worldspan's fall-back position that Orbitz lacks ICFA standing amounts to a premature and incorrect summary judgment argument. Relying on baseless characterizations of the parties' course of dealings, Worldspan attempts to "disprove" Orbitz's allegation, set forth in the Complaint, that Orbitz consumes Worldspan's services and uses them as an integral part of Orbitz's own business. Worldspan jumps from its unilateral conclusion that Orbitz is not a "consumer" to the *non sequitur* that Orbitz can only maintain ICFA standing if it proves that Worldspan violated DOT rules. Worldspan's consumer standing theory is as incorrect as it is hard to follow.

Worldspan's argument makes no sense in the context of Orbitz's Complaint. Orbitz does not base its ICFA standing on any alleged link between DOT regulations and consumer protection concerns. Instead, Orbitz's Complaint alleges in detail[6] that Orbitz consumes

---

[5]     Orbitz's allegation of unfairness applies only to the 2004 Amendment. If the 2002 Amendment is rescinded, the trier of fact need not even consider the circumstances leading to Orbitz's execution of the 2004 Amendment. (*See* Compl. ¶¶ 19-21 & 41; Memo. at 7.)

[6]     Worldspan improperly suggests that Orbitz must plead factual detail supporting its position as a consumer. (Opp'n at 8 n.4.) Worldspan does not cite any authority for the assertion that an ICFA plaintiff must plead evidence of consumer standing. Rather, Worldspan's cases stand for the unremarkable proposition that courts need not accept as true legal conclusions when considering motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Orbitz's detailed factual allegations about its consumption of Worldspan's services are not legal conclusions.

Worldspan's technology services, making Orbitz a consumer and a proper ICFA plaintiff under Illinois law. (*See, e.g.*, Compl. ¶¶ 1, 6, 10, 16, 23 and 47.)

Illinois courts, including some in this District, have found ICFA "consumer" standing where business plaintiffs alleged that they were misled into technology service contracts like the agreement between Orbitz and Worldspan. *See, e.g., Ottowa Strong & Strong v. McLeod Bishop Sys., Inc.*, 676 F. Supp. 159, 160 (N.D. Ill. 1987); *Hartmarx Corp. v. JBA Int'l Inc.*, No. 99 C 4874, 2002 WL 406973, at *7 (N.D. Ill. Mar. 15, 2002) ("By challenging the veracity of the representations made . . . to induce Hartmarx to enter into the software contract, Hartmarx states a fraudulent misrepresentation claim [under the ICFA].") Orbitz's standing as a consumer of Worldspan's services cannot seriously be disputed.

Faced with Orbitz's plain allegation that it consumes Worldspan's services, Worldspan improperly attempts to stretch the ICFA's carve-out for "resellers." Worldspan incorrectly alleges that Orbitz merely repackages Worldspan's services, but Orbitz alleges otherwise. The Court must accept Orbitz's allegations as they were pled. *Fournier*, 191 F. Supp. 2d at 1000. Indeed, Orbitz alleges affirmatively that it "does not resell or license out the data it receives from Worldspan." (Compl. ¶ 47.)

Orbitz should not have to address Worldspan's premature factual dispute, and this Court should not have to give Worldspan an advisory opinion on Worldspan's summary judgment theories. However, the truth is that Worldspan is wrong on the facts as well as the law. The parties' Agreement, which Worldspan unilaterally attached to its Opposition, contemplates Orbitz's consumption of Worldspan's technology services. For instance, the Agreement's fundamental terms obligate Worldspan to provide services "for the *operation* of the Orbitz

website." (*See* Agreement for CRS Access and Related Services, as amended, Opp'n Ex. 1, Section 2.1, emphases added.)

Worldspan also incorrectly claims that Orbitz buys nothing from Worldspan and pays Worldspan nothing. (Opp'n at 9 n.5.) Again, Worldspan's assertion is upended by the parties' own Agreement. Section 4.2, as amended, appears under the heading "Payments" and plainly obligates Orbitz to pay Worldspan for various electronic queries. (*See* Agreement for CRS Access and Related Services, as amended, Opp'n Ex. 1, Section 4.2.) Schedule E of the Agreement similarly sets forth a payment scheme for Orbitz's use of Worldspan's search services.[7] (*See* Agreement for CRS Access and Related Services, as amended, Opp'n Ex. 1, Schedule E.)

In any event, the more fundamental problem with Worldspan's standing theory is its reliance on disputed facts rather than the face of Orbitz's well-pleaded Complaint. It is easy to see why Worldspan's standing argument reads like a summary judgment motion: Worldspan is struggling to make this case look like *Williams Elec. Games, Inc. v. Garrity*, 366 F.3d 569, 579 (7th Cir. 2004). In *Williams*, the Court of Appeals reviewed an order granting *summary judgment* against a consumer fraud plaintiff, where the trial court had first examined "thousands of pages of materials" before finding that the plaintiff lacked ICFA standing. *See Williams Elec. Games, Inc. v. Barry*, No. 97 C 3743, 2001 WL 1104619, at *10 (N.D. Ill. Sept. 18, 2001).

The Court of Appeals reversed the trial court, finding that the plaintiff actually had met its burden to present evidence sufficient to preserve a judiciable dispute on the standing issue. *Williams,* 366 F.3d at 579. Unlike the defendant in *Williams*, Worldspan demands that the Court

---

[7]     The fact that Orbitz also remunerates Worldspan for its services in other ways (e.g., by splitting airline rebates) does not mean that the ICFA is not implicated. It is well established that ICFA plaintiffs do not even have to have privity of contract with the defendant to state a claim. *Connick v. Suzuki Motor Co.* 174 Ill. 2d 482, 503-05, 675 N.E.2d 584, 594-95 (1996). Whether and how Worldspan was paid by Orbitz for its services is not relevant.

make a judicial determination of Orbitz's consumer status at the inception of the case, without a factual record, during consideration of a motion to remand. The *Williams* decisions cannot help Worldspan achieve this absurd result.

As the trial court in *Williams* recognized, standing under the ICFA is a factual issue: "Plaintiff must, therefore, offer *evidence* that the alleged deception involves the market generally or otherwise relates to consumer protection concerns. Plaintiff has offered no such evidence, and the court's review of the thousands of pages of materials presented has uncovered none." *Williams*, 2001 WL 1104619, at *10 (emphasis added).

While *Williams* demonstrates that Worldspan's standing argument is entirely premature, the appellate decision also fails to support Worldspan's standing theory. Worldspan does not explain why this Court should be the first to expand *Williams*' "reseller" holding beyond manufactured goods to cover technology service contracts. Nor does Worldspan explain why the appellate decision in *Williams* does not actually *support* Orbitz's ICFA claim. The Appellate Court's main ICFA holding was that Williams had established standing based on a presumption that alleged costs incurred due to fraud are passed on to consumers. *Williams*, 366 F.3d at 579 ("the fraud must have added something . . . [and] some part of the increase must have been passed on to consumers in the form of higher prices"). The same logic applies here, where Worldspan is alleged to have imposed significant costs on Orbitz, who in turn provides services to the consuming public. (Compl. ¶ 48.)

Worldspan's consumer standing theory is misguided at best. According to Worldspan's logic, courts should now look past a plaintiff's well-pleaded complaint and allow a removing defendant to secure federal jurisdiction by hypothesizing non-existent federal issues that *might* come up later on in the litigation. In this particular lawsuit, however, the chance that Orbitz will

depend on DOT regulations to establish standing under the ICFA is not hypothetical; the chance

is zero. Orbitz will develop whatever evidence is required to establish its status as a consumer

under the ICFA or, in the alternative, to establish that Worldspan's deceptions harmed the

consuming public. Now is not the time for Worldspan to test Orbitz's proof.

### III.   Worldspan Does Not Identify A Substantial Federal Issue

Worldspan fails to present the Court with *any* case law, legislative history, statutory

language, or anything else beyond Worldspan's unconvincing *ad hoc* argument suggesting that

Congress considers DOT regulations to present a "substantial" federal question supporting

jurisdiction. The DOT regulations cited by Orbitz were promulgated by the Department of

Transportation, under regulatory authority granted by the FAA, 49 U.S.C. § 40101, *et seq. See*

DOT regulations, 14 C.F.R. § 255 *et seq.* (citing the FAA as authority). Importantly, this Court

in *Fournier* and the *Midwest Express* and *Sarantino* courts each held that other air travel

regulations promulgated under the FAA and the related Airline Deregulation Act do *not* raise

substantial federal issues supporting removal jurisdiction. Tellingly, Worldspan did not

distinguish those cases or the regulations involved.

According to Worldspan, DOT competition regulations present a substantial federal

question supporting federal jurisdiction over state claims, even though FAA regulations that are

relevant to air disasters, such as those at issue in *Sarantino*, do not. Even more remarkably,

Worldspan asserts that Section 411 of the FAA – which merely provides the Secretary of

Transportation with discretion to investigate and enjoin unfair practices – actually places the

interpretation of DOT regulations "within the *exclusive* authority of the federal government."

(Opp'n at 12, emphasis added, citing 49 U.S.C. §41712(a)). Again, Worldspan does not provide

the Court with any explanation of how the cited FAA provision evinces Congress's alleged intention to reserve all questions touching on DOT regulations for the federal courts.[8]

Worldspan's assertion that Illinois has no interest in DOT rules, and that the federal government has a strong interest in their application, is beside the point. (Opp'n at 12.) Orbitz is not asking for the Circuit Court to declare the amendments at issue void under the DOT regulations. Instead, as is obvious from the face of the Complaint, Orbitz, an *Illinois* consumer, seeks to have the *Illinois* court apply *Illinois* law to rescind the amendments based on Worldspan's deceptive conduct. The federal government does not have a particular interest in that controversy that is strong enough to divest the Illinois court of jurisdiction.

Contrary to another assertion by Worldspan, the absence of a federal cause of action under the FAA and the DOT regulations remains important after *Grable*. Indeed, as the *Grable* Court explained, "the combination of no federal cause of action and no preemption of state remedies," is an important clue indicating that Congress intended to limit the scope of federal jurisdiction. *Grable*, 125 S. Ct. at 2370. *Accord*, *Sarantino*, 2005 WL 2406024, at *8. The FAA (and the DOT regulations) neither preempt Illinois law nor provide a private cause of action. *Sarantino,* 2005 WL 2406024, at *8 n.5. Instead, the FAA includes a savings provision that explicitly leaves state remedies untouched. *See* 49 U.S.C. § 40120(c).

Under *Grable*, this case is not removable. In addition to the lack of a federal cause of action and a lack of federal preemption, the present matter does not turn exclusively on a federal

---

[8] While it is unclear, it appears that Worldspan is attempting to transform its "arising under" theory of federal removal jurisdiction into a complete preemption theory by claiming that federal courts have the unique responsibility to interpret DOT regulations. If so, Worldspan did not raise the theory in its removal papers, and the argument was waived under 28 U.S.C. § 1446(b). In any event, Worldspan's assertion is also incorrect. *See Fournier*, 191 F. Supp. 2d at 1002 (rejecting defendant's claim that the Airline Deregulation Act, which unlike the FAA explicitly preempts state law on certain issues, supported removal). Indeed, the FAA explicitly leaves state law remedies undisturbed, providing that "[a] remedy under this part is in addition to any other remedies provided by law." 49 U.S.C. § 40120(c); *see Sarantino*, 2005 WL 2406024, at *8 n.5 (noting that most courts, including the Northern District of Illinois, hold that the FAA does not completely preempt state law).

issue such as the IRS Code dispute in *Grable*. Instead, Orbitz's Complaint presents numerous state law issues and only collaterally implicates a relatively unimportant federal regulation. Under *Grable*, as well as the subsequent district court decisions in *Baker, Acker*, and *RA Investment I*, discussed above on page 5, this case should be remanded.[9]

## IV. Worldspan Did Not Distinguish Orbitz's Authorities

While Worldspan failed to cite any cases supporting its theory that DOT regulations can support the removal of state law claims, Worldspan also failed to meaningfully address or distinguish Orbitz's relevant cases. For this independent reason, the case should be remanded.

*Fournier*, 191 F. Supp. 2d at 1000; *Baker,* 2005 WL 2387494, at \*6; *Sarantino*, 2005 WL 2406024, \*6; and *Midwest Express*, 315 F. Supp. 2d at 980, each strongly support Orbitz's arguments, yet Worldspan devotes one page of inaccurate discussion to the cases. For example, Worldspan misconstrues this Court's opinion in *Fournier*, claiming that the Court's remand hinged on the fact that the federal aviation regulations at issue only "provided *defenses*." (Opp'n at 11.) In reality, the Court recognized that the FAA regulations at issue also might have "form[ed] part of Dr. Fournier's stated causes of action." *Fournier*, 191 F. Supp. 2d at 1001. Worldspan's attempt to distinguish *Baker* depends entirely on Worldspan's bogus consumer standing and unfairness arguments, discussed above. And Worldspan's attempt to distinguish *Sarantino* and *Midwest Express* based on the courts' holdings that no substantial federal issues were involved begs the question raised above – why should the Court treat DOT regulations differently than the air travel regulations at issue in those cases?

---

[9]     Worldspan misses the point when it claims that few cases just like this one can be expected to flow through the judicial floodgates. (Opp'n at 14.) A determination that DOT regulations promulgated under the FAA provide removal jurisdiction could be used by any defendant whose conduct is regulated by the FAA, including defendants such as the airlines in *Fournier, Midwest Express*, and *Sarantino.*

**Conclusion**

Although the United States Supreme Court recently clarified that fees are to be awarded

for improvident removals only where the defendant lacked an objectively reasonable basis, this

case presents a model for that standard. Worldspan falls well short of identifying an important

federal issue that supposedly supported removal. Worldspan has not met its burden, and the case

should be remanded with an award to Orbitz of its reasonable fees and costs.

Respectfully submitted,

**ORBITZ, LLC**

By: _____ s/ Aron J. Frakes _____
One of Its Attorneys

Paul E. Chronis
Jeffrey J. Bushofsky
Aron J. Frakes
Mark J. Altschul
MCDERMOTT WILL & EMERY LLP
227 West Monroe Street
Chicago, IL 60606
Tel: (312) 372-2000
Fax: (312) 984-7700

CHI99 4569160-2.059735.0013

## CERTIFICATE OF SERVICE

I, Aron J. Frakes, an attorney, certify that I caused a copy of the foregoing **Orbitz's**

**Reply in Support of Its Motion to Remand and for Actual Expenses** to be served upon the

following counsel of record via ECF Notice of Electronic Filing on December 22, 2005:

> William F. Conlon
> John N. Gallo
> Kyle D. Rettberg
> Daniel M. Twetten
> Sidley Austin Brown & Wood LLP
> One South Dearborn Street
> Chicago, Illinois, 60603

                                    s/ Aron J. Frakes

CHI99 4569160-2.059735.0013